WEBB, JUDGE:
Claimant Gerald W. Shaw brought this action as administrator of the estate of Yang Cha Shaw, his wife, and in his own behalf for personal injuries. Claimant and his wife were involved in a serious two-vehicle accident'on June 3, 1990, in Jefferson County. Claimant alleges that respondent was negligent in its maintenance of the intersection of Leetown Road and Route 51 in that there were inadequate signs or other markings to warn the travelling public of a stop required at this particular intersection. Claimant further alleges damages in the amount of$681,768.00 and unliquidated damages for his pain and suffering resulting from his personal injuries. Claimant has made arecovery of $250,000.00 for his personal injuries and $250,000.00 for his wife's estate from the driver of the other vehicle in the accident.
Respondent owns and maintains Route 51 and Leetown Road which is also designated as Secondary Route 1 for respondent's purposes.(The Court will use the designation Leetown Road as this was the terminology used by the witnesses during the hearing) Respondent contends that the intersection of Leetown Road and Route 51 was maintained properly and adequately, and that the proximate and sole cause of the accident was the action or inaction of the driver of the other vehicle in the accident when the driver made a conscious decision to drive into the intersection without stopping at a stop sign which was placed in the proper manner on Leetown Road.
The evidence adduced at hearing of this claim on June 28 and 29, 1994, established that on June 3, 1990, claimant and his wife, Yong Cha Shaw who was also referred to as Kim Shaw during the hearing, were driving in their 1990 Ford Ranger crew cab pick-up truck to their home after having been to Winchester, Virginia. They had exited Interstate 81 and they were proceeding eastbound on Route 51 to reach their home located in a housing development two to three miles east of the Leetown intersection. As claimant drove through the intersection of Route 51 and Leetown Road, a 1985 Plymouth Horizon driven by Candy Lynn Johnson came through the intersection, struck the pick-up truck, and pushed it across Route 51 into the parking lot of a gas station. The pick-up truck flipped onto its side when contact occurred between the two vehicles. As a result of this accident, Kim Shaw suffered injuries resulting in her death and Gerald Shaw suffered severe, permanent personal injuries.
This accident was investigated by two members of the West Virginia Department of Public Safety, both of whom testified at the hearing. Trooper Da"as Wolfe, III, the chief investigating officer, was notified of the Shaw accident at 6:15 p.m. and arrived at the scene about fifteen minutes later. Flis investigation revealed that claimant Gerald Shaw was proceeding east on Route 51 and that Candy Lynn Johnson was driving south on the Leetown Road also known as Secondary Route 1. He determined that Candy Lynn Johnson had failed to stop at a stop sign located at the northwest quadrant of the intersection. After an investigation by the office of the prosecuting attorney, a citation was issued to Ms. Johnson for going through the stop sign at the intersection. Trooper Wolfe took a statement from Ms. Johnson at the accident scene. He testified that she could not get stopped at the stop sign because there was another vehicle behind her and "she was more concerned about getting hit in the rear end than shooting through the intersection." She wanted to get to the parking lot so she would not get hit in the rear-end, and "unfortunately, the Shaw vehicle was coming up 51 when she made that maneuver" He described the intersection of Route 51 and Leetown Road as follows:
Well, it's an intersection that you had better pay attention to . The way *7 I see it is that roadway through there has speed limit signs leading up to that intersection. I feel that if you're obeying the speed limit and watching the other signs along the road warning that there's that intersection up there, that you could stop for that intersection. I see no problem with that. But if you are not paying attention to the signs that are along the roadway, you could go through that intersection very easily. That's how I would describe that intersection, as well as other intersections in that county. There is (sic) a lot of intersections just like this one that if you're not paying attention, because of the way the road is laid out, could shoot through several intersections in that county.
Trooper Wolfe was familiar with the roads in Jefferson County and he testified that the terrain was rolling and that the intersection of Route 51 and the Leetown Road was typical for the area.
The second investigating officer, Sergeant Stephen Tucker, took measurements at the scene of the accident and noted that there were stop signs for north and southbound traffic on the Leetown Road at this intersection and there were signs that indicated stop ahead prior to reaching the intersection. His investigation revealed that there was no evidence that Candy Lynn Johnson applied her brakes or skidded through the intersection and in her statement she related that she actually drove through the intersection or tried to accelerate when she saw that she would not be able to stop. It was his opinion that "if you're driving the speed limit or less and see the stop ahead sign, there's adequate opportunity to be stopped before you reach the intersection" When queried about the general road conditions in Jefferson County, he stated that most of the major routes in Jefferson County have the same type of rolling terrain. He testified that "There would be tens, if not hundreds, of intersections similar to this throughout Jefferson County."
The intersection at Leetown Road and Route 51 was described in great detail during the hearing, and, in fact, the Court took a view of the intersection prior to the hearing of this claim. There were video tapes introduced in evidence for the Court to observe signs on the Leetown Road as a driver approached the intersection with Route 51. The videos provided the Court with the opportunity to observe the crest and trough nature of the approach and the additional signs warning drivers of the stop a/lead at the intersection. (The view of the accident scene taken by the Court did not provide an accurate portrayal of the scene as there was ongoing construction by respondent to remove the hill at the approach to the intersection.) The video tapes were taken sometime after the date of the accident and, likewise, do not depict the scene exactly as it was on June 3, 1990. However, the testimony and photographs taken by the investigating officers do provide the Court with sufficient information to allowthe Court to formulate an opinion as to the adequacy of signs at the intersection of Route 51 and Leetown Road. A description of the intersection was provided through the statements of many of the witnesses at the hearing. The terrain at this intersection is not unlike that at many of the intersections in the eastern panhandle of our State. A motorist traveling southbound on Leetown Road encountered a" Stop Ahead" sign approximately 270 feet from the intersection with Route 51. The sign was placed on the berm of the road and it was located about two-thirds of the way up to the crest of the hill. A motorist would then crest the hill and approach the intersection where there was a thirty-inch stop sign on the northwest quadrant of the intersection. The stop sign was placed by respondent at this location in accordance with the provisions of the Manual on Uniform Traffic Control Devices. Barry Warhoftig, a traffic engineer for respondent, testified that this *8 particular intersection was signed in accordance with that manual which is used by respondent in determining traffic control devices. There was quite a bit of discussion during the hearing as to the existence of a stop bar on the pavement of Leetown Road at the intersection, .but the Court has determined that the photographs and testimony of Sergeant Tucker substantiate the finding that there was no stop bar, ie, a white painted or plastic line on the pavement. Further, Sgt. Tucker testified that in his opinion the purpose of the stop baris "just to give a person a guide as to where to stop. Not so much to indicate a stop or to mandate a stop but just a guide as to this is where you should stop to help the flow of traffic."
The Court considered the location of the signs and the contour of the land at this particular intersection. However, the testimony of the driver of the vehicle which struck the claimant's pick-up truck is an essential element of this claim . Candy Lynn Johnson testified as to the accident with clear and precise memory. She had just graduated from high school on June 3,1990, and she had been visiting with a friend at his home located between Kearneysville and Route 51 . She was on her way from his home to her home located near Charles Town. She was alone in her automobile. She was unfamiliar with the Leetown Road. At about one mile before the intersection, she noticed a woman driving behind her at what she estimated to be half a car length. She was distracted by this vehicle and she did not see the "Stop Ahead" sign as she drove up to the crest of the hill approaching the intersection with Route 51. As she crested the hill, she saw the intersection and the stop sign. She then made a conscious decision to go through the intersection to reach the parking lot of the gas station where she would stop her car. She testified that she was "afraid that if I slammed on the brakes, the lady behind me would push the car and control my entering the intersection. I wanted to be in control so I decided I'd, you know, I'd better go instead of be pushed." The fact that she saw the stop sign and made a conscious decision to enter the intersection without first stopping is factual evidence that was given much weight by the Court when considering its decision.
Claimant's position is that the actions on the part of the driver may be part of the cause of the accident, but the lack of what the claimant contends is inadequate signage and/or flashing lights by respondent is also actionable negligence which contributed to the accident. David Malone, [1] civil engineer practicing as a forensic *9 engineer, testified that The examined the intersection and photographs to determine the placement of the signs on the date of the accident. He referred to the Manual on Uniform Traffic Control Devices and then indicated that he used the "green book" or policy manual or guide published by AASHTO (American Association of State Highway and Transportation Officials). His opinion was that the Route 51 and Leetown Road intersection is not an open road condition, but one of limited sight distance which requires the consideration of the AASHTO guidelines and not just the Manual on Uniform Traffic Control Devices. He also was of the opinion that the skew of the intersection, the immediate location, the rolling nature of the terrain, and, additionally, the "thoroughly steep grade approaching a stop location" are central points in considering an analysis of the intersection.
The Court has given very serious thought to the issues in this claim as well as having reviewed all of the testimony and evidence in this claim. The Court recognizes the tragedy which has befallen the claimant not only in the loss of his beloved wife, but also in the severe personal injuries which he suffered in this accident. However, the Court must consider all of the evidence adduced at the hearing. Respondent had placed a" Stop Ahead" sign on the hill approaching the intersection as prudent notification to the travelling public that a required stop was forthcoming at the intersection of Route 51 and Leetown Road. There was a stop sign in place on the northwest quadrant of the intersection in the normal and proper place for such a sign as well as Route 51 direction signs. Candy Lynn Johnson did not pay heed to the "Stop Ahead" sign as she was distracted by the vehicle close behind her. The standards provided by AASHTO in the "green book" used by Mr Malone in his testimony were considered by him as the applicable standards to be used by respondent in providing signs at the intersection in question. However, Mr. Warhofiig explained that the AASHTO manual or green book provides the guidelines applied by respondent for new construction or renovations to existing roads. The Manual on Uniform Traffic Control Devices is used by respondent for placing signs at existing sites. To require respondent to have additional signage or flashing lights at intersections such as this particular intersection or to require respondent to alleviate hills at approaches to intersections is the place an unreasonable and economically unfeasible burden upon respondent. The Court will not base its decisions upon standards which would not be possible for respondent to follow throughout our State. In addition, the Court has determined that claimant has failed to establish any actionable negligence on the part of the respondent which contributed to this accident. Therefore, it is the opinion of the Court that the proximate, and only, cause of the accident herein was the action of the driver of the vehicle which struck the Shaw pick-up truck on June 3, 1990.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim.
Claim disallowed.

One of the rulings during the hearing involved the application of 23 USC 409 which barred certain evidence from being introduced and restricted the testimony of David Malone. The Court has previously applied this section of the United States Code. Testimony and evidence in cases is limited where studies are made under this section of the Code to suggest changes to highwClys and more specifically to traffic signs and devices at intersections. The purpose of this section is to protect highway departments in all states from information in studies being used in court cases against the departments much as post-accident alterations may not be used to establish negligence. The Court understands the purpose in protecting states. There are many situations that could be made safer by placing different signs, tr8ffic signals, additional devices, or changes to an intersection. However, that does not mean that a highway department was negligent in its original placement of the traffic control devices at the time of a particular accident. The Court holds that this section of the Code is applicable herein and bars any additional testimony of David Malone as an expert because the testimony would be based upon documents and evidence not admissible under 23 USC 409. See Robertson v. Union Pacific R. Co., 954 F. 2d 1433 (8th Cir. 1992) and Gibson and Holcomb v. Div. of Highways, unpublished opinion of the W. Va, Court of Claims dated Feb. 5, 1993, Claim Nos. CC-89-17a & b.